UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BULLION TRADING LLC,

                              Plaintiff,

    -against-

J.P. MORGAN CHASE BANK, N.A.,

                              Defendant.

Case No. 1:25-cv-05980 (JLR)

**<u>OPINION AND ORDER</u>**

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Bullion Trading LLC ("Plaintiff" or "Bullion Trading") brings this action
against Defendant JPMorgan Chase Bank, N.A. ("Defendant" or "Chase") for allegedly blocking
or reversing wire transfers from Chase accountholders to Bullion Trading's account at Waterfall
Bank and telling customers that Bullion Trading is a fraudulent or scam business. *See* Dkt. 1-1
("Compl." or the "Complaint") ¶¶ 2, 13.  Chase moves to dismiss the Complaint in its entirety.
Dkt. 8 ("Mot.").  For the reasons that follow, the motion to dismiss is GRANTED.

BACKGROUND

### I.    Factual Background

The following facts are drawn from the Complaint and taken as true for purposes of this
motion.  *See Costin v. Glens Falls Hosp.*, 103 F.4th 946, 952 (2d Cir. 2024).

Bullion Trading buys and sells precious metals, including gold, to customers nationwide.
Compl. ¶ 8.  To facilitate its sales, Bullion Trading maintains a business bank account at
Waterfall Bank, where customers may direct wire transfers to pay for their purchases.  *Id.* ¶ 10.
Some of Bullion Trading's customers bank with Chase and, therefore, initiate payments to
Bullion Trading's Waterfall Bank account from their Chase accounts.  *Id.*

Bullion Trading alleges that, beginning in 2024 and continuing into 2025, Chase prevented or reversed legitimate wire transfers from Chase accountholders intended for Bullion Trading's Waterfall Bank account. *Id.* ¶¶ 2, 11-12. It further alleges that Chase "[a]dvised certain would-be senders that Bullion Trading is 'fraudulent' or operating a 'scam.'" *Id.* ¶ 13; *see also id.* ¶ 3. According to Bullion Trading, at least one nearly certain sale was lost because a Chase customer, having been falsely informed that Bullion Trading might be a fraudulent company, chose not to proceed with the transaction. *Id.* ¶ 17. Other customers allegedly remained willing to purchase from Bullion Trading but had to use alternative payment methods that led to delays, administrative issues, and certain "lost opportunities." *Id.* ¶ 18. As a result, Bullion Trading claims that it has suffered operational and reputational harm, lost revenue, and economic losses totaling at least $500,000. *Id.* ¶¶ 5, 19.

The Complaint asserts five causes of action: (1) wrongful refusal to execute valid payment orders or lack of good faith in violation of New York Uniform Commercial Code ("NYUCC") Article 4-A, (2) trade libel, (3) tortious interference with business relationships, (4) violation of New York General Business Law ("GBL") § 349, and (5) a request for injunctive relief. *Id.* ¶¶ 20-46.

## II.    Procedural History

Bullion Trading commenced this action on June 23, 2025, in New York State Supreme Court. *See* Compl. On July 22, 2025, Chase timely removed the action to federal court, where it was assigned to the undersigned. *See* Dkt. 1. Shortly thereafter, on September 10, 2025, Chase moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim on which relief can be granted. *See* Mot.; Dkt. 9 ("Br."); Dkt. 10 ("Simson Decl."). On November 14, 2025, Bullion Trading filed its opposition, *see* Dkt. 16 ("Opp." or the "Opposition"), and Chase replied on December 15, 2025, Dkt. 17 ("Reply").

2

Later, on May 29, 2026, Chase submitted a notice of supplemental authority.  *See* Dkt. 18; Dkt. 18-1.  The motion is thus fully briefed.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)).  However, a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  In making its determination, a court is generally limited to the "facts stated on the face of the complaint," as well as "documents appended to the complaint or incorporated in the complaint by reference," "matters of which judicial notice may be taken," and documents "'integral' to the complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citation omitted); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("[A] court may consider documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." (omissions in original) (internal quotation marks and citation omitted)).

## DISCUSSION

### I.    Judicial Notice

Chase asks the Court to consider several materials submitted with the Simson Declaration and the Notice of Supplemental Authority: (1) the verified complaint and affidavit filed in *United States of America v. $247,756.21 in U.S. Currency*, No. 25-cv-00024 (E.D. Ky.) (the "Seizure

Action"), Dkt. 10-1; (2) the Seizure Action docket sheet, Dkt. 10-2; (3) a process receipt and return filed in the Seizure Action, Dkt. 10-3; (4) the district court's opinion on the motion to dismiss filed in the Seizure Action, Dkt. 18-1; (5) and Chase's Deposit Account Agreement ("DAA"), Dkt. 10-4.  Br. at 4 n.2; Reply at 3-4; Dkt. 18 at 1.  Bullion Trading argues that these materials are extrinsic and that, at most, the Court may take judicial notice of the existence of the Seizure Action, not the truth of the allegations in the associated filings.  Opp. at 7, 9.  The Court agrees with Bullion Trading.

"[C]ourts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *see, e.g.*, *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of complaint in related civil action); *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (taking judicial notice of complaint in a state criminal prosecution); *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 148 & n.1 (2d Cir. 2024) (taking judicial notice of plaintiff's prior filed copyright cases), *cert. denied*, 145 S. Ct. 2792 (2025).  The Court therefore takes judicial notice of the existence of the Seizure Action and the documents filed therein, including Dkts. 10-1, 10-2, 10-3, and 18-1, but does not accept the truth of the underlying factual allegations to resolve disputed issues on this motion.  In particular, the Court does not treat the materials as establishing that Bullion Trading is a fraudulent company, that the specific transfers alleged in this action were fraudulent, or that Chase's alleged statements were true.

The Court next considers whether to take judicial notice of the DAA, *see* Reply at 4, and declines to do so.  The DAA "governs Chase's relationship with its deposit account customers." Br. at 1; *see also* Dkt. 10-4.  Chase in part argues that its actions against Bullion Trading were justified, and indeed directly authorized, by the DAA's express terms.  *See, e.g.*, Br. at 12, 15, 16

4

n.8, 17, 21.  But even if the Court were to take judicial notice of the DAA, "it may not rely on truth of the matters asserted within [it], as Defendant[] urge[s] the Court to do." *Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, 632 F. Supp. 3d 402, 442 (S.D.N.Y. 2022); *see Gustavia Home LLC v. Env't Control Bd.*, No. 18-cv-06485 (MKB) (CLP), 2019 WL 4359549, at *7 (E.D.N.Y. Aug. 21, 2019) ("[W]hile the Court may take judicial notice of what a document states, it may not do so to prove the truth of its contents."), *report and recommendation adopted*, 2019 WL 4346012 (E.D.N.Y. Sept. 11, 2019).  In any event, the Complaint is deficient even absent reference to the DAA, and thus the Court declines to take judicial notice of the DAA for purposes of this motion.

## II.     Noncompliance with NYUCC Article 4-A

Plaintiff's first cause of action, wrongful refusal to execute valid payment orders pursuant to NYUCC Article 4-A, is dismissed.  Rather than defend this claim in its Opposition, Bullion Trading concedes that it should be dismissed.  *See* Opp. at 1 ("With the exception of the first cause of action (alleging a violation of Article 4A), Chase's motion to dismiss should be denied.").  "It is well settled in the Second Circuit . . . 'that [a] plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute[s] an abandonment of those claims.'" *N.Y. State Ct. Clerks Ass'n v. Unified Ct. Sys.*, 25 F. Supp. 3d 459, 469 (S.D.N.Y. 2014) (first alteration in original) (quoting *McLeod v. Verizon New York, Inc.*, 995 F. Supp. 2d 134, 143 (E.D.N.Y. 2014)); *see, e.g.*, *Fantozzi v. City of New York*, 343 F.R.D. 19, 32 (S.D.N.Y. 2022) (collecting cases and noting that "[c]ourts may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed" (internal quotation marks omitted) (quoting *Felix v. City of New York*, 344 F. Supp. 3d 644, 654 (S.D.N.Y. 2018))); *Robinson v. Fischer*, No. 09-cv-08882 (LAK) (AJP), 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010) (collecting cases).  Here, Bullion Trading has not just ignored

Chase's arguments; it has acknowledged that the first cause of action should be dismissed.  Thus, the Court so orders.

Even absent Bullion Trading's concession, the Court would nevertheless dismiss Plaintiff's claim because Article 4-A "require[s] that each party to an EFT [(electronic funds transfer)] seek redress for a failed transfer only against a party with which it is in direct privity in the chain of payment orders."  *Receivers of Sabena SA v. Deutsche Bank A.G.*, 36 N.Y.S.3d 95, 105 (N.Y. App. Div. 2016); *see Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 102 (2d Cir. 1998) ("To allow a party to, in effect, skip over the bank with which it dealt directly, and go to the next bank in the chain would result in uncertainty as to rights and liabilities [and] would create a risk of multiple or inconsistent liabilities[.]"); *accord Frankel-Ross v. Congregation OHR Hatalmud*, No. 15-cv-06566 (NRB), 2016 WL 4939074, at *4 (S.D.N.Y. Sept. 12, 2016).  Because Bullion Trading lacks such privity with Chase, its claim fails as a matter of law.

## III.    Trade Libel

Plaintiff's second cause of action, trade libel, is likewise dismissed.  Under New York law, "[i]njurious falsehood, also known as 'trade libel,' 'consists of the knowing publication of false matter derogatory to the plaintiff's business of a kind calculated to prevent others from dealing with the business or otherwise interfering with its relations with others, to its detriment.'"  *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 181 (S.D.N.Y. 2024) (quoting *Kasada, Inc. v. Access Cap., Inc.*, No. 01-cv-08893 (GBD), 2004 WL 2903776, at *15 (S.D.N.Y. Dec. 14, 2004)).  "The elements of an injurious falsehood[] claim are: (1) falsity of the alleged statements; (2) publication to a third person; (3) malice; and (4) special damages."  *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 518 (S.D.N.Y. 2017).  "The cause of action differs from defamation in that a defamatory statement 'impugns the basic integrity or creditworthiness of a business' while an injurious falsehood 'is confined to denigrating the quality of the plaintiff's

6

business's goods or services.'" *Berwick v. New World Network Int'l, Ltd.*, No. 06-cv-02641 (JGK), 2007 WL 949767, at *15 (S.D.N.Y. Mar. 28, 2007) (alterations adopted) (quoting *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 470 (S.D.N.Y. 2006)); *see also Espire Ads LLC v. TAPP Influencers Corp.*, 655 F. Supp. 3d 223, 259 (S.D.N.Y. 2023) ("Injurious falsehood 'lies where the statement is confined to denigrating the quality of the plaintiff's business'[s] goods or services.'" (quoting *Henneberry*, 415 F. Supp. 2d at 470)); *Henneberry*, 415 F. Supp. 2d at 470 ("While both [defamation and trade libel] share the requirement that a speaker publish a falsehood to a third party, they differ with respect to the required subject matter of the speaker's statement.").

Chase argues that the trade libel claim fails because the Seizure Action materials make falsity implausible and because Bullion Trading has not alleged special damages with sufficient particularity as it has not named any of its allegedly lost customers. *See* Br. at 11, 13-14; Reply at 4-5. Bullion Trading responds that it is sufficient for the Complaint to allege Chase falsely (and knowingly) told customers that Bullion Trading was fraudulent, that Chase's reliance on the Seizure Action is improper at the pleading stage, and that customer identities are within Chase's control. Opp. at 8-12. The Court agrees with Chase that dismissal is appropriate here.

As a threshold matter, the statement that "Bullion Trading [i]s 'fraudulent' or 'scam'-related," Compl. ¶ 3, "concerns integrity or business methods, not the quality of goods and services," *Fedak v. YIMBY, Inc.*, No. 17-cv-08825 (KPF), 2018 WL 6697963, at *7 (S.D.N.Y. Dec. 20, 2018). Plaintiff's allegations therefore sound not in trade libel but in defamation, and its trade libel claim may be dismissed on that basis alone. *See, e.g.*, *id.* (dismissing injurious falsehood counterclaim because "[t]he statement 'Dan George is a fraud' concerns integrity or business methods, not the quality of goods and services"); *Espire Ads LLC*, 655 F. Supp. 3d at 260 (dismissing injurious falsehood claim where allegations that plaintiff "defraud[ed] clients"

7

"concerned [plaintiff]'s general reputation" and "did not concern the quality of [plaintiff]'s goods or services" (first alteration in original) (citation omitted)); *cf. Henneberry*, 415 F. Supp. 2d at 472-73 (finding, on motion for leave to amend complaint, that because allegedly false statements "do not speak to the quality of plaintiff's goods or services[,] . . . plaintiff fails to plead an essential element of [an injurious falsehood] claim," which "would thus not survive a motion to dismiss"); *see also iOttie Inc. v. HSM Co. Ltd*, No. 25-cv-02642 (RA), 2025 WL 1905814, at *5 (S.D.N.Y. July 9, 2025) ("Under New York law, defamation and trade libel are two similar but 'distinct causes of action.'" (quoting *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 59 (2d Cir. 2002))); *accord NOVAGOLD Res., Inc. v. J Cap. Rsch. USA LLC*, No. 20-cv-02875 (LDH) (PK), 2022 WL 900604, at *10 (E.D.N.Y. Mar. 28, 2022).

As for Chase's asserted bases for dismissal, the Court agrees with Bullion Trading that Chase's falsity argument is premature. The trade libel claim cannot be dismissed on the proffered ground that the Seizure Action materials demonstrate the truth of Chase's alleged statements. Br. at 11. As explained above, the Court may notice the existence of those materials but not the truth of the disputed assertions within them. *See supra* Part I. Accepting the Complaint's allegations as true, Bullion Trading asserts that it is a lawful precious metals business and that Chase falsely described it as fraudulent or operating a scam. Compl. ¶¶ 3, 8, 13, 26-27. The existence of the Seizure Action does not, at this stage, establish the truth of the alleged statements or foreclose falsity as a matter of law. *See Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016) ("[A] court at th[e] [motion to dismiss] stage of [a] proceeding is not engaged in an effort to determine the true facts. The issue is simply whether the facts the plaintiff alleges, if true, are plausibly sufficient to state a legal claim.").

Nevertheless, the trade libel claim fails because, as Chase observes, Bullion Trading does not plead special damages with the specificity that New York law requires. "The New York

courts define special damages as the loss of something having economic or pecuniary value.  In addition, special damages must be fully and accurately stated, with sufficient particularity to identify actual losses." *Alt. Electrodes, LLC v. Empi, Inc.*, 597 F. Supp. 2d 322, 337 (E.D.N.Y. 2009) (citation omitted); *see also Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 406 (E.D.N.Y. 2004) ("Special damages are pecuniary losses (including loss of sales) resulting from a defendant's allegedly wrongful conduct.").  Where, as here, "loss of customers constitutes the alleged special damages, the individuals 'who ceased to be customers, or who refused to purchase, must be named' and the exact damages itemized." *Fendi USA, Inc.*, 314 F.3d at 59 (quoting *Drug Rsch. Corp. v. Curtis Publ'g Co.*, 166 N.E.2d 319, 322 (N.Y. 1960)); *accord Pasternack v. Lab'y Corp. of Am.*, No. 10-cv-04426 (PGG), 2014 WL 4832299, at *19 (S.D.N.Y. Sept. 29, 2014), *aff'd*, 839 F.3d 151 (2d Cir. 2016); *Covet & Mane, LLC v. Invisible Bead Extensions, LLC*, No. 21-cv-07740 (JPC) (RWL), 2023 WL 2919554, at *15 (S.D.N.Y. Mar. 23, 2023), *report and recommendation adopted*, 2023 WL 6066168 (S.D.N.Y. Sept. 18, 2023).  "Plaintiff [also] cannot plead a round number untethered to an offer or precise sale price, as damages must be tied to an actual lost sale." *Zaret v. Bonsey*, No. 22-cv-07109 (AT), 2023 WL 6317956, at *3 (S.D.N.Y. Sept. 28, 2023) (citations omitted).

Here, Bullion Trading alleges a lost "near-certain" sale, Compl. ¶ 17, other delayed or burdened transactions, *id.* ¶ 18, and damages of "no less than $500,000," *id.* ¶¶ 19, 30.  But it does not name the customer who allegedly refused to proceed with the sale, identify any other customer who stopped or postponed a transaction, state the amount of any lost sale, or itemize the damages that comprise its $500,000 figure.  Such general allegations of lost sales from unidentified customers and round-number damages do not satisfy the special damages requirement. *See Covet & Mane, LLC*, 2023 WL 2919554, at *15 ("General allegations of lost sales from unidentified customers are insufficient and round figures or a general allegation of a

dollar amount will not suffice." (citation modified)); *see also Bilinski v. Keith Haring Found., Inc.*, 96 F. Supp. 3d 35, 51 (S.D.N.Y. 2015) ("Pleading damages as a round number with no attempt at itemization alleges general rather than special damages."), *aff'd*, 632 F. App'x 637 (2d Cir. 2015) (summary order); *accord Soter Techs., LLC v. IP Video Corp.*, 523 F. Supp. 3d 389, 410-11 (S.D.N.Y. 2021) (collecting cases).  And "[a] plaintiff who has not alleged special damages with the requisite specificity has failed to state a cause of action for [trade libel]." *Verizon Directories Corp.*, 309 F. Supp. 2d at 406; *see, e.g.*, *Bilinski*, 96 F. Supp. 3d at 51 ("As special damages are an element of a trade libel claim, the failure to allege special damages is fatal to the claim."); *NOVAGOLD Res., Inc.*, 2022 WL 900604, at *11 ("Failure to plead special damages is a fatal defect to a claim for trade libel." (alteration adopted) (internal quotation marks and citation omitted)).

Contrary to the weight of settled authority in this Circuit, Bullion Trading contends that while it would be "preferable" for it to identify specific customers, it is not required to do so because the accountholders' names are not in its control, and are instead known to Chase.  Opp. at 11.  The Court is unpersuaded for several reasons.  First, Plaintiff's sole cited authority is an out-of-circuit case applying Illinois law.  *See id.* (citing *Cont'l Nut Co. v. Robert L. Berner Co.*, 345 F.2d 395, 397 (7th Cir. 1965)); *see also Cont'l Nut Co*, 345 F.2d at 397 (noting that it is applying Illinois law).  Needless to say, decisions from other circuits are not binding on this Court.  *See Johnson v. Geraci*, No. 22-cv-04450 (VB), 2026 WL 457043, at *5 (S.D.N.Y. Feb. 18, 2026) ("[T]his Court is not bound by out of circuit authority."); *Ziboukh v. Whaleco, Inc.*, 795 F. Supp. 3d 349, 389 n.14 (E.D.N.Y. 2025) (noting that "the Court is not bound by out-of-circuit decisions" and distinguishing out-of-Circuit authority because it "applied California state contract law rather than New York state contract law").  Second, in addition to being nonbinding, *Continental Nut Co.* is inapposite.  There, "[a]lthough not naming the particular customers it lost,

10

plaintiff listed specific figures of its gross sales before and after the publication [of allegedly false statements] and averred that the decrease in sales was the 'natural and proximate result' of the [publication]." *Cont'l Nut Co*, 345 F.2d at 397.  In contrast, Bullion Trading here has failed both to identify lost customers with specificity and to itemize the damages that comprise its round $500,000 figure.  *See, e.g.*, *MMS Trading Co. Pty Ltd. v. Hutton Toys, LLC*, No. 20-cv-01360 (MKB), 2021 WL 1193947, at *11 (E.D.N.Y. Mar. 29, 2021) (dismissing trade libel claim where the plaintiff did "not identif[y] its lost customers and . . . pled damages as a round number with no attempt at itemization").  That is to say, its damages claim is wholly untethered from *any* specific loss.  Third, and finally, it "is well settled" that "New York imposes very strict requirements for proof of special damages in the form of lost customers," in that "if the special damage was a loss of customers, . . . the persons who ceased to be customers, or who refused to purchase, *must* be named." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 75 F. Supp. 2d 235, 239-40 (S.D.N.Y. 1999) (emphasis added) (quoting *Drug Rsch. Corp.*, 166 N.E.2d at 322), *aff'd*, 314 F.3d 48 (2d Cir. 2002); *accord Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 194 F. Supp. 3d 263, 292 (S.D.N.Y. 2016); *see also Smid v. Bernard*, 63 N.Y.S. 278, 283 (N.Y. Sup. Ct. 1900) ("If the plaintiff cannot give the names of those who have ceased to deal with him . . . , he must be nonsuited; although there has in fact been a falling off in his business." (citation omitted)); *see, e.g.*, *Dio Magna LLC v. Pongnon*, No. 21-cv-04671 (MKB), 2022 WL 22911393, at *10 (E.D.N.Y. Sept. 26, 2022) (dismissing trade libel claim where, as here, the "[p]laintiff d[id] not even give the number of customers" that the plaintiff had lost due to the defendants' statements).[1]  Bullion Trading's suggestion that the identities of its lost

---

[1] "Some courts have allowed a narrow exception to the rule that plaintiffs seeking to recover for lost sales must identify their lost customers with particularity when . . . the defendant's disparaging comments are disseminated widely, and the nature of the plaintiff's business prevents the specific identification of lost customers[.]" *Verizon Directories Corp.*, 309 F. Supp.

customers must be recovered from Chase does not relieve Bullion Trading of its obligation to state a claim in the first instance. *McGregor v. City of New York*, No. 24-cv-06951 (EK) (TAM), 2026 WL 472590, at *5 (E.D.N.Y. Feb. 19, 2026) ("[A] party may not use discovery in order to gather evidence with which to state a claim in the first instance."); *accord Bridgewater v. Taylor*, 745 F. Supp. 2d 355, 358-59 (S.D.N.Y. 2010) (collecting cases); *see also Haynes v. City of New York*, No. 19-cv-01925 (NRB), 2020 WL 4926178, at *18 (S.D.N.Y. Aug. 20, 2020) ("[I]t is axiomatic that a plaintiff must state a claim *before* he is entitled to discovery." (quoting *Bristol-Myers Squibb Co. v. Matrix Lab'ys Ltd.*, No. 12-cv-05846 (PAE), 2015 WL 4430614, at *8 (S.D.N.Y. July 20, 2015)). Accordingly, the Court dismisses Plaintiff's trade libel claim.

In a footnote in its Opposition, Bullion Trading asks that it be permitted to amend its Complaint to remedy any dismissal of its trade libel claim owing to failure to plead special damages. Opp. at 11 n.5. Chase responds that leave to amend should be denied as futile. Reply at 10-11. The Court agrees with Chase.

Rule 15 provides that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has instructed that leave should generally be granted absent "undue delay, bad faith or dilatory motive on the part of the movant,

---

2d at 406; *see also Charles Atlas, Ltd. v. Time-Life Books, Inc.*, 570 F. Supp. 150, 156 (S.D.N.Y. 1983) (recognizing exception to the pleading requirement where plaintiff sold "only through mail orders" and disparaging statements were published in a book); *Fendi USA, Inc.*, 75 F. Supp. 2d at 240-41 (collecting cases and observing that the *Atlas* "exception applies only in a case in which the defendant has disseminated the defamation widely"). But this is not such a case. Here, the Complaint establishes that the at-issue statements were not disseminated widely, but rather circulated solely to Chase customers who had initiated wire transfers to Bullion Trading. *See* Compl. ¶¶ 12-13. It is also not at all clear that the nature of Bullion Trading's business prevents it from identifying its lost customers, particularly where Bullion Trading alleges that these customers were, in several instances, blocked from *completing* purchases (rather than discouraged from *initiating* the purchases to begin with). *Id.* ¶¶ 2, 12, 18 (alleging that Chase "[p]revented or reversed legitimate wire transfers," forcing customers "to use alternative payment methods").

repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *accord Parot v. Clarivate Plc*, No. 22-cv-00394 (EK) (MMH), 2023 WL 4163528, at *1 (E.D.N.Y. June 23, 2023). Leave may be denied, however, where amendment would be futile, meaning the amended claim "could not withstand a motion to dismiss." *Singh v. Deloitte LLP*, 123 F.4th 88, 93 (2d Cir. 2024) (citation omitted); *see Veras v. N.Y.C. Dep't of Educ.*, No. 22-cv-00056 (JLR) (SN), 2024 WL 3446498, at *8 (S.D.N.Y. July 17, 2024) ("Nonetheless, 'it is within the sound discretion of the district court to grant or deny leave to amend,' and 'a district court may properly deny leave when amendment would be futile.'" (first quoting *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018); and then quoting *Jones v. N.Y. State Div. of Mil. & Naval Affs.*, 166 F.3d 45, 50 (2d Cir. 1999))), *aff'd*, No. 24-1956-cv, 2025 WL 2824851 (2d Cir. Feb. 6, 2025) (summary order). "[D]enial of leave to amend is [additionally] proper 'where the request gives no clue as to how the complaint's defects would be cured.'" *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)).

Setting aside that the tort libel claim fails because it lacks "the requisite element[]" of "statements . . . concern[ing] the quality of [Plaintiff]'s goods or services," *Espire Ads LLC*, 655 F. Supp. 3d at 260, Bullion Trading has failed to articulate how it would remedy its independent failure to plead special damages. Indeed, Bullion Trading concedes that it "does not have access to the names of the accountholders and the 'would-be senders,'" Opp. at 11 — thereby acknowledging the futility of its requested leave to amend. The Court therefore dismisses Plaintiff's trade libel claim with prejudice. *See, e.g.*, *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 275-76 (2d Cir. 2006) (finding that the district court did not abuse its discretion in denying leave to amend where the request was made only in a footnote and "plaintiff's counsel

13

did not advise the district court how the complaint's defects would be cured"); *Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 55 (2d Cir. 2025) (affirming denial of leave to amend where request was made simply in a footnote and plaintiff "ha[d] not identified any proposed amendments" (citation omitted)); *see also, e.g.*, *Watts v. Fleck*, No. 10-cv-440S, 2012 WL 1391928, at *2 (W.D.N.Y. Apr. 20, 2012) (dismissing plaintiff's claim with prejudice and noting that "[w]hile such dismissal ordinarily would be without prejudice, [p]laintiff's concessions and submissions render amendment as to these [d]efendants futile").

## IV.    Tortious Interference with Business Relations

Plaintiff's third cause of action, tortious interference with business relations, is also dismissed.  To state a tortious interference with business relations claim under New York law, a plaintiff must plead that "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship."  *RFP LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 195 (S.D.N.Y. 2011) (quoting *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 132 (2d Cir. 2008)).  Bullion Trading fails to plead the first and third elements.

As to the first element (business relations with third parties), Bullion Trading alleges that it "has valid business relationships and ongoing sales with multiple customers, including [Chase accountholders]."  Compl. ¶ 32.  Chase argues that these allegations do not suffice because they fail to identify any specific business relationship, as New York law requires.  Br. at 15; Reply at 6.  Chase is correct.

"Th[is] first element requires that a plaintiff allege interference with a specific third party."  *Espinoza v. CGJC Holdings LLC*, No. 23-cv-09133 (DLC), 2025 WL 459913, at *3 (S.D.N.Y. Feb. 11, 2025).  A general allegation of interference with customers, without a

sufficiently particular allegation of interference with a specific contract or business relationship, is not enough. *See, e.g.*, *Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 402-03 (S.D.N.Y. 2012) (collecting cases where courts in this district have dismissed claims for failing to "adequately allege[ ] *specific* business relationships with which [d]efendant allegedly interfered"); *Stephens v. Trump Org. LLC*, 205 F. Supp. 3d 305, 311 (E.D.N.Y. 2016) ("The failure to identify a specific business relationship with a third party is 'fatal' to a claim of tortious interference." (quoting *DiFolco*, 622 F.3d at 115)).  Bullion Trading alleges relationships with "multiple customers" and one "near-certain" sale, but it does not identify any customers with specificity.  Compl. ¶¶ 17-18, 32.  That level of generality does not permit the Court to infer interference with a particular business relationship.  Plaintiff has therefore failed to plead this element.

Turning to the third element (wrongful means), Chase argues that Bullion Trading has failed to plausibly plead that Chase's conduct arises to an independent tort, as required by law. Br. at 16-18; Reply at 7.  Bullion Trading counters that its alleged trade libel claim supplies the necessary tort.  Opp. at 12-13.

"The 'wrongful means' element sets a high bar," and generally requires a showing that the interfering conduct "amount[ed] to a crime or an independent tort," or served "the sole purpose of inflicting intentional harm" on the claimant.  *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262 (2d Cir. 2015) (quoting *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1103 (N.Y. 2004)); *accord JDM Imp. Co. Inc. v. Shree Ramkrishna Exps. Pvt., Ltd.*, No. 20-cv-08759 (VEC), 2021 WL 5450237, at *8 (S.D.N.Y. Nov. 19, 2021); *see also Wellington Shields & Co. LLC v. Breakwater Inv. Mgmt. LLC*, No. 14-cv-07529 (RJS), 2016 WL 5414979, at *7 (S.D.N.Y. Mar. 18, 2016) ("With respect to wrongful means, New York law interprets that term narrowly to include 'physical violence, fraud, misrepresentation, civil suits, criminal prosecutions and some

15

degree of economic pressure[ ].'" (alteration in original) (quoting *Snyder v. Sony Music Ent., Inc.*, 684 N.Y.S.2d 235, 239 (N.Y. App. Div. 1999))). Bullion Trading's wrongful-means theory hinges on its trade libel claim. Opp. at 13. But because the trade libel claim is not adequately pleaded, it cannot serve as the predicate independent tort on the present Complaint. *See, e.g.*, *Espinoza*, 2025 WL 459913, at *4 (dismissing tortious interference claim where court had already found that underlying defamation claim "fail[ed] as a matter of law"); *Garfinkle v. Conf. on Jewish Material Claims Against Germany, Inc.*, No. 19-cv-07007 (JPO), 2020 WL 6323462, at *4 (S.D.N.Y. Oct. 28, 2020) (dismissing tortious interference claim where court had already found underlying defamation and intentional infliction of emotional distress claims were not sufficiently pleaded and plaintiff had not otherwise "demonstrate[d] that [d]efendants' conduct was undertaken with the 'sole purpose' to harm him"). Bullion Trading does not otherwise allege facts showing that Chase acted with the sole purpose of harming Bullion Trading. *See Plasticware, LLC*, 852 F. Supp. 2d at 403 ("To satisfy the third element, [p]laintiff must allege that [d]efendant committed a 'crime or an independent tort,' or applied economic pressure 'for the sole purpose of inflicting intentional harm on [p]laintiff.'" (alteration adopted) (quoting *Carvel Corp.*, 818 N.E.2d at 1103)); *see also Garfinkle*, 2020 WL 6323462, at *5 (finding "complaint's allegations are not sufficiently 'suggestive' of malice" where "[t]here is an 'obvious alternative explanation' for [defendant]'s conduct" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2004)); Br. at 1 (noting that Chase blocked wire transfers "to avoid a loss or reduce a risk to the bank")). Thus, the tortious interference claim is dismissed.

## V.    Violation of General Business Law § 349

Plaintiff's fourth cause of action, violation of GBL § 349, is dismissed. Section 349 protects against "deceptive . . . acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349(a); *see also id.*

16

§ 349(h) (establishing private right of action for "any person who has been injured by reason of any deceptive act or deceptive practice" covered by Section 349). "To state a claim under NY GBL § 349, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct, that is (2) materially misleading, and that (3) the plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Lin v. Canada Goose US, Inc.*, 640 F. Supp. 3d 349, 358 (S.D.N.Y. 2022) (quoting *Plavin v. Grp. Health Inc.*, 146 N.E.3d 1164, 1168 (N.Y. 2020)); *accord Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). "[S]ection 349 is directed at wrongs against the consuming public," that is, against "acts or practices [that] have a broader impact on consumers at large." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995); *accord Plavin*, 146 N.E.3d at 1168. "Liability under the statute attaches 'primarily where a party's misrepresentations are boilerplate and have the potential to be repeated in order to deceive numerous similarly situated buyers.'" *Seidler v. JPMorgan Chase Bank, N.A.*, No. 23-cv-01462 (GHW) (VF), 2024 WL 344551, at *4 (S.D.N.Y. Jan. 12, 2024) (quoting *Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 449 (S.D.N.Y. 2004)), *report and recommendation adopted*, 2024 WL 343299 (S.D.N.Y. Jan. 30, 2024).

"Accordingly, 'private contract disputes, unique to the parties, would not fall within the ambit of the statute.'" *Wood v. Mut. Redevelopment Houses, Inc.*, No. 19-cv-09563 (AT), 2021 WL 4255054, at *7 (S.D.N.Y. Sept. 17, 2021) (alterations adopted) (quoting *Oswego*, 647 N.E.2d at 744); *accord Yoomi Babytech Inc. v. Anvyl, Inc.*, No. 20-cv-07933 (ER), 2021 WL 4332258, at *14 (S.D.N.Y. Sept. 22, 2021); *see also Occidental Chem. Corp. v. OHM Remediation Servs. Corp.*, 173 F.R.D. 74, 76 (W.D.N.Y. 1997) ("[Section 349] has been construed by the courts to be a consumer protection law inapplicable to business-versus-business disputes where the party asserting the claim is not acting in a consumer role." (omission adopted)

17

(internal quotation marks and citation omitted)).  "Thus, if a plaintiff does not plead and prove injury to the public generally, rather than just to himself, then he cannot benefit from the consumer protection law found in Section 349."  *123RF LLC v. HSBC Bank USA, N.A.*, 663 F. Supp. 3d 391, 403 (S.D.N.Y. 2023) (alterations adopted) (internal quotation marks and citation omitted)); *accord MaGee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582, 586 (E.D.N.Y. 1997).

Bullion Trading alleges that Chase's repeated mislabeling of Bullion Trading as fraudulent and blocking of wire transfers to Bullion Trading's business account constituted deceptive practices affecting the public interest and injured both Bullion Trading and Chase customers.  Compl. ¶¶ 39-42.  Chase argues that the claim is a private business dispute, that Bullion Trading is not a consumer of Chase services, and that the Complaint does not plausibly allege materially misleading conduct or injury caused by consumer deception.  Br. at 19-22; Reply at 8-9.  Bullion Trading responds that the conduct was directed at Chase accountholders who were attempting to buy precious metals and was therefore consumer-oriented conduct.  Opp. at 13-14.  The Court agrees with Chase.

The Complaint does not allege consumer-oriented conduct within the meaning of Section 349.  The gravamen of the Complaint is that Chase interfered with Bullion Trading's receipt of payments and damaged Bullion Trading's business reputation and revenue potential.  Compl. ¶¶ 2-3, 17-19, 39-42.  Those allegations describe a dispute over transactions involving a specific merchant, a particular receiving account, and statements about that merchant.  They do not plausibly allege a practice directed to the public at large or a broad class of similarly situated consumers.  *See Top Off. Pros Bus. Servs., Inc. v. JPMorgan Chase Bank N.A.*, No. 25-cv-02544 (GHW) (HJR), 2025 WL 2753609, at \*2, \*6 (S.D.N.Y. Sept. 29, 2025) (finding that plaintiff's claim that "Chase's rejection of wire transfers interferes with [plaintiff's] ability to conduct business . . . [and] creat[es] a false impression of criminal activity" does not implicate consumer-

oriented conduct within the meaning of Section 349); *Dfinity Found. v. N.Y. Times Co.*, 702 F. Supp. 3d 167, 177 (S.D.N.Y. 2023) (dismissing Section 349 claim because "the gravamen of the [c]omplaint [wa]s not consumer injury or harm to the public interest, but rather an alleged particularized harm to plaintiff," namely direct harm to plaintiff's "reputation and business" (citation omitted)), *aff'd*, No. 23-7838-cv, 2024 WL 3565762 (2d Cir. July 29, 2024) (summary order).

Bullion Trading's attempt to rely on Chase accountholders as the relevant consumers does not save the claim. The injury for which Bullion Trading seeks damages is its *own* lost sales, business disruption, and reputational harm. Compl. ¶¶ 19, 41-42. The fact that unidentified Chase customers allegedly heard false statements about Bullion Trading does not transform Plaintiff's private commercial injury into a consumer-protection claim. *See Dfinity Found.*, 702 F. Supp. 3d at 177 (rejecting argument that allegedly defamatory publications "injured customers because the publications deceived them" and observing that "the overwhelming majority of — if not all — federal courts to address the question" have found that generalized statements of "consumer confusion" are "insufficient to state a Section 349 claim" (internal quotation marks and citation omitted)); *Gibson v. SCE Group, Inc.*, 391 F. Supp. 3d 228, 251 (S.D.N.Y. 2019) (collecting cases), *aff'd*, No. 22-916, 2023 WL 4229913 (2d Cir. June 28, 2023); *Miller v. HSBC Bank U.S.A., N.A.*, No. 13-cv-07500, 2015 WL 585589, at *8 (S.D.N.Y. Feb. 11, 2015) ("Where a plaintiff makes only conclusory allegations of impact on consumers at large, a GBL § 349 claim must be dismissed."); *Mayes v. Summit Ent. Corp.*, 287 F. Supp. 3d 200, 209 (E.D.N.Y. 2018) ("[I]n order to survive a motion to dismiss [their Section 349 claim] [plaintiffs] need to allege harm to consumers beyond mere confusion."). Therefore, Plaintiff's Section 349 claim is dismissed.

19

## VI.    Injunctive Relief

Finally, Plaintiff's fifth cause of action, styled as a request for preliminary and permanent injunctive relief, is dismissed.  An injunction is a remedy, not a standalone cause of action.  *D.M. Discoveries, Inc. v. Dutton*, No. 07-cv-05076 (TCP) (ETB), 2008 WL 11471052, at *5 (E.D.N.Y. Aug. 1, 2008) ("It is black-letter law that an injunction is a remedy and not a separate cause of action sustainable on its own." (internal quotation marks and citation omitted)), *report and recommendation adopted*, 2009 WL 10712995 (E.D.N.Y. Dec. 21, 2009); *Ya-Chen Chen v. The City Univ. of New York*, No. 11-cv-00320 (CM), 2011 WL 5419792, at *10 (S.D.N.Y. Nov. 9, 2011) ("Injunctive relief is not a cause of action, but a remedy."); *Strongbow Holdings, LLC v. RMS Titanic, Inc.*, No. 22-cv-05680 (ER), 2023 WL 4897393, at *7 n.16 (S.D.N.Y. Aug. 1, 2023) ("An injunction is not a cause of action, it is a remedy."); *see also Catalano v. BMW of N.A., LLC*, 167 F. Supp. 3d 540, 545 (S.D.N.Y. 2016) ("[Plaintiff]'s claim for injunctive relief is dismissed because an injunction is a remedy, not a separate cause of action[.]"); *Manrique v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-00224 (KMK), 2021 WL 5745717, at *8 (S.D.N.Y. Dec. 2, 2021) (holding same); *Hartke v. Bonhams & Butterfields Auctioneers Corp.*, No. 22-cv-03571 (PGG), 2023 WL 8551889, at *3 n.4 (S.D.N.Y. Dec. 11, 2023) (same).  Bullion Trading's reliance on *Corsello v. Verizon New York, Inc.*, 908 N.Y.S.2d 57 (N.Y. App. Div. 2010), *modified on other grounds*, 967 N.E.2d 1177 (N.Y. 2012), Opp. at 15, is unavailing because even the *Corsello* court recognized that "permanent injunctive relief is, at its core, a remedy dependent on the merits of the substantive claims." *Corsello*, 908 N.Y.S.2d at 77.  Because the Court dismisses the substantive claims as pleaded in the Complaint, Plaintiff's injunctive-relief count is likewise dismissed.

20

## CONCLUSION

Chase's motion to dismiss is GRANTED.  The Clerk of Court is respectfully directed to terminate the motion at Dkt. 8 and CLOSE this case.

Dated:  June 22, 2026
        New York, New York

SO ORDERED.

_____

JENNIFER L. ROCHON
United States District Judge

21